UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION


LEROY F. MILLER,                         )
                                         )
            Petitioner                   )
                                         )
      v.                                 )    Cause No.: 3:09-CV-505 RM
                                         )    (arising from 3:04-CR-138(02)RM)
UNITED STATES OF AMERICA,                )
                                         )
            Respondent                   )


OPINION AND ORDER

This matter is before the court on Leroy Miller's *pro se* § 2255 motion to vacate, set aside or correct sentence, and his motion for court appointed counsel. After a three-day trial before Judge Allen Sharp, a jury convicted Mr. Miller of aiding and abetting convicted felon Ricky Fines in his possession of firearms. *See* 18 U.S.C. §§ 922(g)(1) and 2. This court sentenced Mr. Miller below the guideline range to ten months' imprisonment, followed by two years of supervised release. The court of appeals affirmed Mr. Miller's conviction and sentence. United States v. Miller, 547 F.3d 718 (7th Cir. 2008). For the following reasons, the court denies Mr. Miller's motions.

Mr. Miller maintains he is innocent and he seeks to have his sentence vacated, the jury verdict set aside, and the charges against him dismissed. Mr. Miller timely filed his § 2255 petition on October 19, 2009, and the government responded on March 1 after obtaining extensions without objection from Mr.

Miller. Mr. Miller hasn't filed a reply. Mr. Miller was released from imprisonment in December 2009 but is now serving his two year term of supervised release, so his § 2255 petition remains viable. *See* Kusay v. United States, 62 F.3d 192, 193 (7th Cir. 1995).

The court decides Mr. Miller's petition without a hearing, and denies his request for court-appointed counsel. If "the motion and files and records of the case conclusively show that the petitioner is entitled to no relief," no evidentiary hearing is required. 28 U.S.C. § 2255. Based on the court's review of the parties' filings and the record of this case, the court concludes that the factual and legal issues raised by Mr. Miller may be resolved on the record, so no hearing is necessary. *See* Menzer v. United States, 200 F.3d 1000, 1006 (7th Cir. 2000).

Counsel may be appointed for a financially eligible person seeking relief under 28 U.S.C. § 2255 if the "interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). A review of Mr. Miller's sophisticated arguments, including his many exhibits, confirms that Mr. Miller is fully capable of articulating his arguments. Rule 8(c) of the Governing Rules of Section 2255 Proceedings requires appointment of counsel if an evidentiary hearing is held, but no hearing is needed to decide Mr. Miller's petition. Because the absence of counsel won't result in an unfair proceeding in violation of Mr. Miller's due process rights, the court denies his motion for appointment of counsel.

I. Background

Leroy Miller boarded Ricky Fines in his home from around 2001 through 2004. Mr. Miller and Mr. Fines were business associates and refurbished and resold guns together. Mr. Miller says he took Mr. Fines into his home as an act of kindness because Mr. Fines suffered from serious mental and physical health problems.

The trouble was that Mr. Fines was a convicted felon. Everything Mr. Miller did was legal up to when he learned of Mr. Fines' felony conviction and still gave Mr. Fines access to guns. Mr. Miller's theory of defense has been that he didn't know Mr. Fines was a convicted felon when Mr. Fines moved into his home in 2001 and that he conducted a few background checks on Mr. Fines, which didn't turn up any criminal history. He says that when he found out, he moved all the firearms in his home to a locked storage shed where Mr. Fines couldn't access them.

ATF Agent Jeffrey Emmons and Cass County Seriff's Department Sergeant Tom Wallace went to the Miller home in March 2004 so that Sargent Wallace could serve subpoenas in an unrelated civil case involving Messrs. Miller and Fines. Agent Emmons didn't identify himself as an ATF agent, but said he was with the Cass County Sheriff's Department. The Millers invited the two officers into the home's kitchen area, and Mr. Fines told Mr. Emmons that he lived in the home with the Millers.

In April 2004, officers executed a search warrant at Mr. Miller's home and found three firearms in the home and thirty-one firearms in a shed nearby. Mr.

Miller admitted in a taped statement given to law enforcement on that day that Mr. Fines told him he was a felon a year after moving into the Miller home, somewhere around November 2002. Mr. Miller's estranged son, Leroy Miller, IV ("Ike"), testified that he helped move firearms out of the house into a storage shed somewhere between two and four weeks before the April 8 search, creating the inference that Mr. Miller moved the guns out of the house in response to the appearance of Sergeant Wallace and Agent Emmons on March 9, 2004.

The jury returned a guilty verdict for aiding and abetting a convicted felon's possession of guns. The court of appeals affirmed the sufficiency of the evidence for that conviction. *See* United States v. Miller, 547 F.3d 718, 719-720 (7th Cir. 2008).

Mr. Miller argues that his conviction violated his constitutional rights because it was obtained (a) by use of evidence gathered from an unconstitutional search and seizure; (b) by use of coerced and perjured testimony; (c) by the prosecution's unconstitutional failure to disclose exculpatory evidence; (d) by blatant misconduct of the prosecutor and his team; (e) even though the trial judge should have issued a directed verdict of not guilty; (f) because he had ineffective assistance of counsel; (g) even though it didn't meet criteria for a guilty verdict set forth in the judge's jury instructions; and (h) even though he was convicted of a violation of law that didn't exist until he was convicted of it.

Jay Stevens was Mr. Miller's attorney throughout his proceedings until February 18, 2010. Mr. Stevens withdrew then because the court had ruled that

Mr. Miller waived his attorney-client privilege when he filed his § 2255 petition claiming ineffective assistance of counsel. Mr. Stevens states that Mr. Miller advocated the theory of defense that Mr. Miller moved his guns to his shed as soon as he learned Mr. Fines was a convicted felon and afterward only asked Mr. Fines to work on the stocks of the guns (the part that rests on the shoulder, which contains no firing mechanism). Stevens Affidavit, at ¶ 5 [Doc. No. 163-1]. Mr. Miller wanted to pursue this defense despite his taped statement placing his knowledge of Mr. Fines' felony at around November 2002. Stevens Affidavit, at ¶6.

## II. ANALYSIS

A person convicted of a federal crime may attack his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, the court had no jurisdiction to impose such sentence, the sentence exceeded the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Relief under § 2255 is reserved for extraordinary situations. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996) (*citing* Brecht v. Abrahamson, 507 U.S. 619, 633-634 (1993)). "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." Kelly v. United States, 29 F.3d 1107, 1112 (7th Cir. 1994), *overruled on other grounds*, United States v. Ceballos, 302 F.3d 679

(7th Cir. 2002); *see also* Brecht v. Abrahamson, 507 U.S. at 633-634 (noting that habeas relief is meant to cure only grievous wrongs).

A § 2255 petition can't substitute for an appeal or advance arguments that could have been made earlier. *See* Reed v. Farley, 512 U.S. 339, 354 (1994) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of *habeas corpus* will not be allowed to do service for an appeal." (quoting Sunal v. Large, 332 U.S. 174, 178 (1947))); Fountain v. United States, 211 F.3d 429, 433 (7th Cir. 2000) ("It is well-established . . . that a § 2255 motion is not a substitute for direct appeal."). Constitutional claims not raised on direct appeal are barred unless the petitioner shows good cause and actual prejudice for not raising the issues on appeal. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds*, Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994).

"[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003). To prevail on his claim of ineffective assistance of counsel, Mr. Miller must show both (1) that his attorney's performance was objectively unreasonable in its deficiency such that he was denied the counsel guaranteed by the 6th Amendment, and (2) that this deficient performance prejudiced his defense, rendering the outcome of the proceedings against him unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984); Jones v. Page, 76 F.3d 831, 840 (7th Cir. 1996). If Mr. Miller cannot

make a showing on both prongs, his claim must be dismissed. Jones v. Page, 76 F.3d at 840.

For the first prong, judicial scrutiny of the attorney's performance must be "highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Jones v. Page, 76 F.3d at 840 (quoting Strickland v. Washington, 466 U.S. at 689). An attorney's duty isn't to raise every conceivable defense or obstruction, for a "lawyer has an obligation to be truthful and forthright with the court, [and] he has no duty to make a frivolous argument." Fuller v. United States, 398 F.3d 644, 652 (7th Cir. 2005) (quotation removed).

To show prejudice under the second prong, Mr. Miller must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694; Jones v. Page, 76 F.3d at 840.

Important for all that follows below, a habeas petitioner can't succeed if he simply makes accusations without supporting them in his petition with some objective evidence that suggests a hearing should be held to determine the truth of the accusations. The court declines to entertain the notion that Mr. Stevens missed something crucial from the witnesses at and after trial because neither Mr. Miller nor anyone else has ever come forward to this court or to Mr. Stevens with

objective evidence substantiating Mr. Miller's accusations. *See, e.g.*, <u>Paters v. United States</u>, 159 F.3d 1043, 1047 n.5 (7th Cir. 1998) (noting that petitioner's sworn declaration was not objective evidence, and neither were affidavits of petitioner's parents which merely repeated the "tenuous assertions" made by the petitioner himself).

### *A. Search and Seizure on April 8, 2004*

Mr. Miller contends that ATF Agent Jeffrey Emmons' affidavit supporting the search warrant contained non-credible, stale and false information. Mr. Miller further contends that the April 2004 search and seizure was itself unconstitutional. A competent lawyer, he argues, would have filed a <u>Franks</u> motion to challenge the validity of the affidavit and a motion to suppress the fruits of the April 2004 search and seizure.

As explained below, the search and seizure was constitutional. It was reasonable for Mr. Stevens not to file what would have been a frivolous <u>Franks</u> motion and it was reasonable for Mr. Stevens not to file what would have been an unsuccessful motion to suppress evidence. Further, Mr. Stevens' professional judgment didn't prejudice Mr. Miller.

Mr. Miller asserts that former business associate Richard Tedlock had a grudge against Messrs. Miller and Fines because of a soured business relationship. Mr. Miller says Mr. Tedlock intended to harass him and Mr. Fines when Mr. Tedlock contacted Sargent Tom Wallace of the Cass County Sheriff's

Department on or around March 1, 2004 regarding four guns he claimed Messrs. Miller and Fines had stolen from him.

Mr. Tedlock told law enforcement that Mr. Fines was a felon and that he had seen multiple firearms in the Miller home and in Mr. Fines's bedroom, including two wooden crates with "long guns" packed in grease. Mr. Miller argues that competent law enforcement would know that Mr. Tedlock wasn't a credible source. In addition to Mr. Tedlock's poisoned motives for contacting law enforcement, he was a convicted felon, a "con man" who had pleaded guilty to selling unregistered securities. Not only was Mr. Tedlock not credible, Mr. Miller argues, but his information was stale because Mr. Tedlock admitted to law enforcement that he hadn't been in the Miller home since May 2003, eleven months before the search occurred.

On or around March 5, 2004, Sergeant Wallace interviewed a neighbor, who reported frequently hearing rapid gunfire coming from the Miller property. Mr. Miller argues that this is a blatant lie that was later included in Agent Emmons' affidavit. Mr. Miller alleges that the neighbor told a Michael Bennet, an investigator, that he never said this.

Mr. Miller contends that ATF Agent Emmons unlawfully gained access to his house on March 9, 2004. He argues that Agent Emmons was invited into his home under the false pretense of serving four civil subpoenas in an unrelated civil matter (a lawsuit filed against the Millers and Mr. Fines by the harassing Richard Tedlock.) Sergeant Wallace identified himself as a police officer, but Agent

Emmons never indicated he was with the ATF, wore no ATF insignia, and represented he was "with" the Cass County Sheriff's Department.

During their March 9, 2004 visit to the Miller home, Sergeant Wallace and Agent Emmons saw what appeared to be a small caliber rifle near the door where they entered. Mr. Miller contends that anyone with any knowledge of guns would have known this was a classic Daisy BB gun. Thus, the affidavit, which states that Sergeant Wallace and Agent Emmons saw a small caliber rifle in the home contained false information.

Mr. Miller argues that Agent Emmons did a poor job of conducting an ATF record check on firearms registered to Mr. Fines. Agent Emmons discovered that three destructive devices were registered to Mr. Fines in California decades ago, but if he had searched far enough he would have discovered that Mr. Fines had legally transferred or sold those devices long ago, with the proper paperwork filled out. Therefore, Mr. Miller argues, the affidavit contained false information that Mr. Fines still had three destructive devices registered to him.

In sum, Mr. Miller argues that "law enforcement officers were simply helping a felon settle his civil issues with Messrs. Miller and Fines for some reason." Motion to Vacate, Attachment A, at 6 [Doc. No. 141].

Beyond what Mr. Miller points out, Agent Emmons also included in his affidavit information about a recorded phone conversation between Messrs. Tedlock and Fines on April 5, 2004 in which Mr. Fines confirmed that he and Mr. Miller had agreed to perform some restoration on Mr. Tedlock's firearms, which

Agent Emmons described separately in the affidavit from the Title II weapons as a .357 magnum Smith and Wesson model 19 revolver, a .25 caliber semi-automatic pistol with blued finish, a .410 gauge single shot shotgun, and a .16 gauge double-barrel shotgun with a blued finish. Mr. Fines told Mr. Tedlock he and Mr. Miller had the guns and that Mr. Miller had recently moved the guns.

Mr. Stevens affidavit notes that Mr. Miller's theory of defense involved casting the facts in a certain light: demonstrating an innocent narrative while the government was trying to create a guilty narrative. Yes, Messrs. Miller and Fines worked on guns together, but as soon as Mr. Miller learned of Mr. Fines' past felony conviction, he moved the guns to the storage shed out of Mr. Fines' reach. Mr. Stevens says he made a reasoned and professional judgment that filing a motion to suppress evidence seized would be unsuccessful even though Agent Emmons didn't identify himself as ATF when he went to the Miller home on March 9, 2004. Further he made a professional judgment that challenging Agent Emmons's affidavit supporting the search warrant would be unsuccessful because the defense would have to make a preliminary showing that Agent Emmons made a deliberate falsehood or statements that were in reckless disregard for the truth, and he didn't think the defense could make such a showing. The defense wasn't that there were no firearms on the Miller property, nor that convicted felon Ricky Fines didn't live in a room on the first floor of the Miller home, nor that Mr. Fines didn't work with Mr. Miller on refurbishing guns. This was an additional reason for not pursuing a <u>Franks</u> motion and not filing a motion to suppress. Stevens

Affidavit, at ¶ 4. Finally, Mr. Stevens knew of Mr. Miller's theory about Mr. Tedlock's poisoned motives, but he determined that whatever information Mr. Tedlock provided to law enforcement had no impact on the information subsequently gathered from Agent Emmons's investigation. Stevens Affidavit, at ¶9.

Mr. Stevens' professional judgment was reasonable and didn't prejudice Mr. Miller because neither a <u>Franks</u> motion nor a motion to suppress would have been successful. "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." <u>United States v. Peck</u>, 317 F.3d 2003 (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)). Affidavits supporting search warrants are presumed valid. <u>United States v. Jackson</u>, 103 F.3d 561, 574 (7th Cir. 1996) (citing <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978)). Mr. Miller would have faced a "formidable task" had he brought a <u>Franks</u> motion and would have had to show (1) the application for search warrant contained a false statement; (2) Agent Emmons' state of mind in making the false statement was at least reckless; and (3) the false statement was material, meaning necessary for finding probable cause. <u>United States v. Jackson</u>, 103 F.3d at 574 (discussing <u>Franks v. Delaware</u>, 438 U.S. at 155-156)). Mr. Miller's assertions provide no reason to think Agent Emmons made any false or reckless statements in his affidavit, and the affidavit is more than adequate to support probable cause.

It doesn't matter why Mr. Tedlock approached law enforcement, or that Mr. Tedlock wasn't the most credible person in the world, or that Mr. Tedlock hadn't been on the property since May 2003. Agent Emmons used Mr. Tedlock's information only as a starting point and began conducting an investigation. Agent Emmons explained Mr. Tedlock's background in his affidavit, but he also included additional corroborating information that he found in the course of his investigation.

Agent Emmons confirmed that Mr. Fines was a convicted felon. Mr. Tedlock told Agent Emmons of large guns and large crates covered in grease. In Mr. Emmons' experience, this was consistent with the storage of Title II firearms, sometimes referred to as bazookas or anti-tank weapons. An ATF records check revealed that Title II weapons were registered to Mr. Fines in California and that Mr. Fines had never sold or disposed of the devices before coming to Indiana. The ATF report of investigation shows that Mr. Fines originally had six destructive devices registered to him, but that he transferred three of these devices in 1986 and 1987. ATF NFA Specialist Brown identified three ATF form 4467's indicating that Mr. Fines still had three destructive devices registered to him. Mr. Fines knew how to obtain permission to move these devices because he had done so in the past to move them within California in 1979. *See* ATF Report of Investigation, March 18, 2004 [Doc. No. 163-5]. Mr. Miller (or Mr. Fines, for that matter) hasn't come forward with paperwork showing that Mr. Fines legally disposed of these

guns. There is no showing of false information or recklessly reported information here.

Agent Emmons's affidavit conceded that he didn't identify himself as ATF in his March 9, 2004 visit to the Miller home with Sergeant Wallace. Agent Emmons stated he noticed a fifty-five gallon drum located about forty feet from the house riddled with bullet holes. During the visit, Mr. Fines admitted to living in the house. Agent Emmons and Sergeant Wallace say they saw a small caliber rifle near the door where they entered the house. Emmons Affidavit, ¶ 3 A-D; Wallace Affidavit, ¶ 2. Mr. Miller claims it was a Daisy BB-gun and anyone knowing anything about BB-guns would know the difference. The jury apparently believed the officers' evaluation of what type of gun it was, and there is no showing of false or recklessly reported information here.

Mr. Miller makes no showing that his neighbor never told Agent Emmons he often heard rapid gunfire from the Miller property. This neighbor has never come forward to recant what he told Sergeant Wallace in March 2004, so there is no showing of false or recklessly reported information here.

Mr. Miller hasn't shown that he could have succeeded on a motion to suppress, which he must show to get his foot in the door on this ground of his ineffective assistance claim. *See* Shell v. United States, 448 F.3d 951, 955 (7th Cir. 2006). That Agent Emmons didn't present himself as being an ATF agent makes no difference because Sergeant Wallace was clearly identified as an officer, Agent Emmons indicated he was with the Sheriff's Department, the officers made

their observations within the confines of properly serving summonses and after being invited into the Millers' kitchen, and because Agent Emmons' affidavit informed the magistrate of the circumstances of the visit. *See* <u>United States v. Bosse</u>, 898 F.2d 113, 115 (9th Cir. 1990) (citing <u>Lewis v. United States</u>, 385 U.S. 206, 211 (1966) (holding undercover agent didn't violate 4th Amendment where defendant invited him into home and agent's actions in home didn't exceed scope of defendant's invitation to effect drug sale)).

### B. Alleged Use of Coerced and Perjured Testimony.

Mr. Miller makes a lengthy accusation that ATF Agent Emmons and ATF Special Agent Eric Ellis committed perjury at trial, largely focusing on testimonial inconsistencies. Mr. Miller also claims that his son Ike and Glenn Hissong were coerced into testifying at trial.

To the extent Mr. Miller is challenging the sufficiency of the evidence to convict him, the court declines to entertain his claims. The appellate court has already squarely affirmed the sufficiency of the evidence to convict Mr. Miller. *See* <u>United States v. Miller</u>, 547 F.3d 718, 719-720 (7th Cir. 2008). The "law of the case" doctrine holds that once the appellate court has decided the merits of a ground of appeal, that decision is the law of the case and is binding on a court asked to decide the same issue at a later phase in the case. <u>United States v. Mazak</u>, 789 F.2d 580, 581 (7th Cir. 1986). The evidence was sufficient to convict Mr. Miller. That is the law of the case now and cannot be disturbed by this court.

To the extent Mr. Miller is attacking his attorney's trial performance, the court denies Mr. Miller's claim. The trial record demonstrates that Mr. Stevens presented a vigorous defense, carefully cross-examined witnesses, and zealously presented Mr. Miller's version of the story to the jury.

Mr. Miller claims Agent Ellis committed perjury because he said he found a Mossberg shotgun in the doorway of the Miller home, found a frame or receiver for a semi-automatic pistol in Mr. Fines' room, and didn't remember seeing a three-legged table on a workbench in Mr. Fines' room. The video taken on the day of the search revealed no shotgun in the doorway, no semi-automatic weapon parts in Mr. Fines' room, and showed a three-legged table in Mr. Fines' room. Mr. Stevens carefully cross-examined Agent Ellis on the inconsistencies between what he remembered while testifying at trial and what was depicted in the video taken that day. *See* Trial Tr. I, at 117-125 [Doc. No. 86].

Mr. Miller accuses Agent Emmons of committing perjury, largely for reasons already addressed above. He also accuses Agent Emmons of perjury because he testified before a grand jury on December 8, 2004 that he wasn't at the Miller home on the day of the search but testified at trial that he showed up at the Miller home after the search was mostly completed on April 8, 2004. Mr. Stevens carefully cross-examined Agent Emmons' lack of presence and consequent lack of personal knowledge of the search at trial. *See* Trial Tr. I, at 54-58. Mr. Stevens careful cross-examination of these witnesses was reasonable, and there can't be

prejudice merely because the jury (and the court of appeals) found the evidence sufficient to convict Mr. Miller.

Mr. Miller argues the government coerced his son Ike by making Ike a suspect in the February 2007 burglary of the Miller home to pressure Ike into testifying. Mr. Miller says Ike told his mother after the trial that he lied on the stand because he didn't want to be prosecuted for burglary. Mr. Miller claims there are recorded statements that Ike made to the AUSA about his untruthful testimony in which the AUSA threatened Ike with prosecution for perjury.

Mr. Miller also accuses the government of coercing Glenn Hissong into testifying at trial by threatening him with prosecution for obstruction of justice. Mr. Miller says Agent Emmons lied when he reported that Mr. Hissong told him he saw Mr. Miller and Mr. Fines fire guns a number of times, which is proven, he says, by Mr. Hissong's trial testimony that he didn't recall seeing Mr. Fines fire a gun.

Mr. Miller's claims about the alleged coercion of Ike are unsubstantiated. Mr. Miller told his attorney after trial that Ike had told his mother he was coerced by government agents and that Glenn Hissong was also coerced into testifying falsely. Ike Miller refused to speak with Mr. Stevens's office before trial, Stevens Affidavit, at ¶ 8, and it was Mr. Miller — not the government — who named Ike as a suspect in the February 27, 2007 burglary of his home, *see* Cass County Sheriff's Department Investigative Report [Doc. No. 163-6]. Mr. Stevens told Mr. Miller he would have to have an affidavit from one of the allegedly coerced

witnesses to make a motion for a new trial, but no affidavit ever came. As of February 24, 2010, Mr. Stevens had never heard from Ike Miller or Glenn Hissong, nor did Mr. Miller ever provide Mr. Stevens with the alleged taped conversation between Ike Miller and AUSA Maciejczyk. Stevens Affidavit, at ¶ 10. It was reasonable for Mr. Stevens not to present unsubstantiated allegations to the court. That professional judgment didn't prejudice Mr. Miller: any motion for a new trial or other relief would have been denied because the accusations are wholly unsupported.

### C & D. Alleged <u>Brady</u> Violation and Prosecutorial Misconduct

Mr. Miller alleges that even though Mr. Stevens "made all proper requests for production of all evidence in possession of the government" the prosecution didn't disclose the alleged coercion of testimony from Ike Miller and didn't disclose the untruthfulness of information contained in Agent Emmons's affidavit for a search warrant. *See* Motion to Vacate, Attachment C [Doc. No. 141]. Mr. Miller also alleges that the prosecutor's conduct amounted to an "aggressive and malicious campaign," *see* id., Attachment D, because, among other reasons already stated or not relevant to Mr. Miller's case, Ike Miller begged the prosecutor after trial to tell his story that he had been coerced into false testimony but was met with a threat of prosecution for perjury.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or

to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Any evidence bearing on the credibility of witnesses falls within this rule, as well as any impeachment or exculpatory evidence, and prosecutors are responsible even if police know of the information but the prosecutors do not. *See* Kyles v. Whitley, 514 U.S. 419, 433-434 (1995); United States v. Bagley, 473 U.S. 667, 676 (1985); Giglio v. United States, 405 U.S. 150, 154 (1972).

To show a Giglio violation, Mr. Miller must show (1) the prosecutor suppressed evidence; (2) such evidence was favorable to the defense; and (3) the suppressed evidence was material. Abbott v. United States, 195 F.3d 946, 948 (7th Cir. 1999).

As already noted, Mr. Stevens represented Mr. Miller until February 18, 2010 — months after filing his § 2255 petition. Mr. Miller has never come forward to the court directly or to his attorney with any evidence corroborating his allegations. Ike Miller, Glenn Hissong and neighbors have never come forward to recant their statements and testimony. The alleged taped conversation between Ike Miller and AUSA Maciejczyk has never been produced to this court or to Mr. Miller's attorney. There is no showing the prosecutor suppressed evidence, and the accusations of prosecutorial misconduct are unsubstantiated.

*E. Directed Verdict*

Mr. Miller contends the trial judge should have issued a directed verdict of not guilty because he (Judge Sharp) and the sentencing judge (Judge Miller) "were almost overwhelmed with concern" about the evidence in the case. *See* Motion to Vacate, Attachment E [Doc. No. 141]. Mr. Miller's characterization of the judges' comments is exaggerated and off the mark. *See* Trial Tr. I, at 89-92, 101 [Doc. No. 86]; Trial Tr. III, at 78 [Doc. No. 88]; Sentencing Tr. at 41[Doc. No. 113]. Mr. Stevens moved for a directed verdict, but the trial court found the evidence sufficient to go to a jury. *See* Trial Tr. III, at 78 et seq. [Doc. No. 88]. As already explained, the "law of the case" is the evidence was sufficient to convict Mr. Miller, and Mr. Miller can't use his habeas petition as a second appeal.

## F. Ineffective Assistance of Counsel

Mr. Miller files a separate attachment to his motion alleging ineffective assistance of counsel. Most of his arguments are repetitious and have already been addressed above.

Mr. Miller alleges that Mr. Stevens should have called Agent Jim Cronan to the stand because Agent Cronan had told Mr. Miller to hang on to Mr. Tedlock's four guns while he investigated Mr. Tedlock's situation. Mr. Miller thinks this would have proven to the jury Mr. Tedlock's real reasons for contacting officers in the first place. Mr. Stevens states that, in his professional opinion, Agent Cronan would have added no persuasive evidence to the defense theory that as soon as Mr. Miller knew Mr. Fines was a felon, he removed firearms from the home and

never asked Mr. Fines to work on the firearms, but only the stocks. Stevens Affidavit, at ¶11.

"Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been and prove that this witness's testimony would have produced a different result." Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994). Mr. Stevens' choice not to call Agent Cronan as a witness was reasonable and didn't prejudice Mr. Miller: the motive behind Mr. Tedlock's actions doesn't establish Mr. Miller's guilt nor does it exonerate Mr. Miller. It shows one person's vendetta, but that does nothing to change the objective facts as found by the jury: that Mr. Miller knew Mr. Fines was a convict and nonetheless provided Mr. Fines access to guns.

Mr. Miller also says Mr. Stevens didn't challenge the AUSA's assertions about the time frame when Mr. Miller became aware of Mr. Fines' prior felony conviction. The jury found it was soon enough, and the appellate court agreed. Mr. Stevens did in fact challenge the AUSA's assertions. For one of many examples, at closing he argued

> What did Leroy Miller do to associate himself with the crime of Rick Fines possessing a firearm as a convicted felon? First of all, for the largest part of the time that Rick Fines was there, he didn't even know he was a convicted felon. And you've got to know a crime is being committed before you can aid and abet. Secondly, after he found that Rick Fines was a convicted felon, you don't have any evidence that he did anything further other than continue to let him live there, which is perfectly legal, and continue to let him order parts, which is perfectly legal, and continue to handle his own collection, which is perfectly legal, and to continue to buy and sell and trade guns as part of his collection, which is perfectly legal.

Trial Tr. III, at 118-119 [Doc. No. 88].

Finally, Mr. Miller claims Ike Miller committed identity theft and ran up tens of thousands of dollars in medical bills just before meeting Agent Emmons and Sergeant Wallace, giving Ike more reason to be untruthful. Mr. Miller says Mr. Stevens learned of this just after trial and before sentencing, but Mr. Stevens didn't bring it up at sentencing. This information would not have affected Mr. Miller's sentence because it isn't a mitigating factor for the crime of which Mr. Miller was convicted. Ike Miller never came forward to speak with Mr. Stevens, even though Mr. Stevens had attempted to contact him. *See* Stevens Affidavit, at ¶¶ 8, 10. It was reasonable for Mr. Stevens not to offer unsubstantiated statements to the court at sentencing and it didn't prejudice Mr. Miller's sentencing that this unsubstantiated information wasn't presented.

### G. Criteria for Guilty Verdict: "Knowingly"

Mr. Miller points out that to be guilty he must have "knowingly" aided Mr. Fines in being a convicted felon in possession, but that "knowing" doesn't include "acted through ignorance, mistake, or accident." Jury Instruction No. 13 [Doc. No. 71]. Mr. Miller argues that he performed three background checks on Mr. Fines, none of which turned up Mr. Fines' arson conviction. He argues that Agent Emmons could only find the conviction when he was directed to the Logansport, Indiana police department, "most likely by ex-convict Richard Tedlock." This is evidence, he argues, that he didn't knowingly aid Mr. Fines.

To the extent Mr. Miller challenges the sufficiency of the evidence against him, the law of the case prevents the court from entertaining his arguments, as noted above. To the extent Mr. Miller might be accusing his attorney of unreasonably failing to object the jury instruction, it wasn't unreasonable or prejudicial for Mr. Stevens not to object to the jury instruction. The instruction was taken from the seventh circuit pattern instructions. Jury Instruction No. 13 [Doc. No. 71]; Seventh Circuit Criminal Federal Jury Instructions §4.06 (1999). There is no ineffective assistance of counsel for not objecting to these pattern instructions. *See* <u>Smith v. McKee</u>, —F.3d—, 2010 WL 909069, at *7 (7th Cir. March 16, 2010).

### H. Convicted of Violating Law Allegedly Not in Existence

Finally, Mr. Miller contends that he was convicted of violating a law that didn't exist until he was convicted of it, and cites comments from this court supporting his assertion. Mr. Miller misrepresents the thrust of this court's comments, which were that his activity was legal until he knew Mr. Fines was a felon and he nonetheless gave Mr. Fines access to his guns. *See* Sent. Tr., January 2, 2008, at 42-43 [Doc. No. 113]. Criminal liability for aiding and abetting is a fundamental principle of criminal law and it isn't ineffective assistance of counsel to not make a frivolous challenge to such a fundamental legal principle.

### III. CONCLUSION

For these reasons, the court DENIES Mr. Miller's § 2255 motion to vacate

[Doc. No. 141] and his motion for appointment of counsel for his habeas petition

[Doc. No. 142].

SO ORDERED.


ENTERED: April 13, 2010

                                                  /s/ Robert L. Miller, Jr.
                                              Judge
                                              United States District Court


cc: L. Miller
    B. Brook/J. Maciejczyk